**[Exempt From Filing Fee Government Code § 6103]**

SCOTT E. HUBER, Bar No. 227196
shuber@colehuber.com
SAMUEL L. EMERSON, Bar No. 222783
semerson@colehuber.com
TYLER J. SHERMAN, Bar No. 343567
tsherman@colehuber.com
COLE HUBER LLP
2281 Lava Ridge Court, Suite 300
Roseville, California 95661
Telephone: (916) 780-9009
Facsimile: (916) 780-9050

Attorneys for Plaintiff
TOWN OF PARADISE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOWN OF PARADISE,<br><br>Plaintiff,<br><br>v.<br><br>ERNST & YOUNG, LLP,<br><br>Defendant. | Case No.<br><br>**TOWN OF PARADISE'S COMPLAINT FOR:**<br><br>**(1) Breach of Contract**<br>**(2) Professional Negligence**<br>**(3) Negligence**<br>**(4) Negligent Misrepresentation**<br>**(5) Intentional Misrepresentation**<br><br>**DEMAND FOR JURY TRIAL** |

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

Plaintiff TOWN OF PARADISE brings this Complaint against Defendant ERNST & YOUNG, LLP and DOES 1-50, and alleges as follows:

**PARTIES**

1. Plaintiff TOWN OF PARADISE ("PLAINTIFF" or "TOWN") is, and at all relevant times was, a public entity in the County of Butte, in the State of California, and brings this suit in its own capacity.

2. Defendant ERNST & YOUNG, LLP ("DEFENDANT"), is limited liability partnership registered in the State of Delaware and operating throughout the United States and the State of California, including in the County of Butte and Town of Paradise.

3. The true names and capacities of certain other Defendants ("DOES 1-50") are currently unknown to the TOWN. The TOWN is informed and believes, and on that basis alleges, that each "DOES" defendant is responsible in some manner for the acts and omissions alleged herein. The TOWN will provide the true names of the "DOE" Defendant when the same have been ascertained. Namely, the TOWN is informed and believes and based thereon alleges that Defendants, each of them, are the agents and/or employees of each other, and were acting within the course and scope of such agency or employment in doing the acts complained of.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between the TOWN and DEFENDANT and the amount in controversy is greater than $75,000, exclusive of interest and costs. The TOWN is a public entity in the State of California, and DEFENANT is a citizen of the State of Delaware.

5. This Court has personal jurisdiction over DEFENDANT. At all relevant times DEFENDANT transacted, solicited, and conducted business in California through its employees, agents, and/or representatives, and derived substantial revenue from its business in California.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because all events, actions, and omissions complained of occurred within the Eastern District of California, specifically in the Town of Paradise in the County of Butte. Venue is also proper under 28 U.S.C. § 1391(b)(3) because DEFENDANT is subject to the Court's personal jurisdiction.

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

## GENERAL ALLEGATIONS

7. The Camp Fire caused catastrophic damage to the Town in November 2018, destroying thousands of properties and leaving thousands of burned, hazardous trees at risk of falling. The President of the United States declared a disaster, authorizing debris removal under the Federal Emergency Management Agency ("FEMA") public assistance program.

8. The State of California, through the California Office of Emergency Services ("OES") requested public assistance for removing fire-damaged trees and debris from private property. FEMA approved funds ("State Program") on December 6, 2018, authorizing removal of trees on private property posing risk to the public and debris removal crews.

9. Under the State Program, the TOWN was required to ensure that homeowners in the TOWN either cut hazardous trees themselves or enrolled in the State Program. For any homeowner that did not enroll in the State Program or remove hazardous trees on their own, the TOWN was required to ensure removal, such as through abatement.

10. DEFENDANT approached the TOWN offering to assist the TOWN in obtaining public assistance from FEMA. The TOWN and DEFENDANT ultimately executed a services contract ("CONTRACT") in January 2019. The TOWN and DEFENDANT executed at least four amendments to the CONTRACT between January 2019 and June 2021. True and correct copies of the CONTRACT and its amendments are attached as **Exhibits 1–5**.

11. Among other terms, the CONTRACT's scope of services specifically required DEFENDANT to (1) implement strategies for securing federal and state funding; (2) maximize federal and state funding; (3) ensure that "procurement processes" adhered to FEMA federal grants recovery criteria; (4) manage financial accounting needs, including documentation for full reimbursement; (5) oversee government claims processes; (6) ensure all eligible costs were properly submitted to FEMA; (7) create and manage tracking mechanisms to comply with all deadlines; and (8) coordinate and manage deliverables with FEMA.

12. DEFENDANT was contractually obligated to "perform all services . . . in the manner and according to the standards currently observed by a competent practitioner of Contractor's profession in California."

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

13. DEFENDANT warranted that its firm was comprised of individuals with the ability and skill necessary to perform the CONTRACT. The CONTRACT stated failure to comply with all regulations, policies, procedures, and FEMA directives was a material breach.

14. Around July 1, 2019, with DEFENDANT's assistance pursuant to the CONTRACT, the TOWN wrote to OES requesting FEMA approve funding for the TOWN's implementation of the State Program and for the removal and disposal of remaining hazardous trees. OES submitted the supplemental request to FEMA.

15. Subsequently, around September 2019, FEMA approved public assistance for removal of trees on private property posing an imminent threat of falling on the public right-of-way or other property. FEMA required that an expert assess and certify that trees throughout the Town were in fact hazardous trees eligible for funding. FEMA's approval required that the program for identification and removal of hazardous trees be mandatory. If individual homeowners did not remove a hazardous trees, the State or the TOWN had to use their authority to do so.

16. FEMA then approved and obligated Project 97307 around February 2020. It approved $92,620 for expert arborist costs associated with assessing hazardous trees between May 22, 2019, and September 25, 2019.

17. The arborist assessment work was not complete as of February 2020 due to thousands of hazardous trees that remained and required removal. Further arborist assessments were needed to address the remaining trees. The TOWN and DEFENDANT had routine meetings regarding during or around the 2019 to 2021 timeframe, and DEFENDANT was at all times aware of the necessity of ongoing funding for assessment and removal of hazardous trees.

18. Unbeknownst to the TOWN, however, DEFENDANT failed to request or pursue funding for ongoing arborist work. It did not request any additions to the scope of work for which public assistance was approved under Project 97307. DEFENDANT, among other failures, failed to advise the TOWN of limitations on additional funding, failed to ensure eligible costs for continued arborist work were submitted to FEMA, failed to manage documents and claims necessary for complete reimbursement, and did not implement procedures to comply with FEMA deadlines.

/ / /

19. Based on the belief that DEFENDANT had complied with its contractual obligations to manage the TOWN's claims for funding, the TOWN secured the services of expert arborists services from Tetra-Tech, Inc.

20. Between around July 2020 and December 2021, the TOWN incurred at least $955,000 in arborist fees; $177,178.26 in project management costs; and $7,002.55 in postage fees. The TOWN thus incurred at least $1,139,180.81 in costs based on its belief that DEFENDANT had secured eligibility for public assistance for the ongoing arborist work.

21. The TOWN is informed and believes, and on that basis alleges, that DEFENDANT represented to the TOWN that the continued arborist work was eligible for public assistance. The TOWN is also informed and believes, and on that basis alleges, that DEFENDANT represented to the TOWN that DEFENDANT had satisfied its contractual obligations to ensure that the continued work was eligible for public assistance.

22. When TOWN staff responsible for disaster recovery inquired about funding for ongoing assessment and removal of trees, DEFENDANT represented that the funding was covered by FEMA and that DEFENDANT had submitted all documentation and information necessary for receipt of public assistance.

23. Following completion of the arborist work, it became apparent that DEFENDANT had failed to submit requests for public assistance and to ensure that FEMA would grant public assistance for the assessment and removal of trees that occurred after September 25, 2019. In light of its failures, DEFENDANT coordinated the TOWN' later submission of a request to change the scope of work under Project 97307 in July 2022.

24. FEMA denied the TOWN's request in March 2023. FEMA's denial stated that the request was untimely because eligible work must be completed within six months from the declaration of a disaster unless FEMA extended that time. FEMA stated that the period of performance thus ended on May 12, 2019, and that it had not granted any extensions.

/ / /

/ / /

/ / /

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

25. The TOWN pursued administrative remedies by appealing FEMA's denial up to the United States Civilian Board of Contract Appeals ("Board"). The Board denied the TOWN's appeal on February 14, 2025, determining that the scope of work change request was untimely because it was not submitted until more than two years following the obligation of Project 97307.

26. The TOWN, consequently, received no public assistance reimbursing the $1,139,180.81 it expended in reliance on DEFENDANT'S representations.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

**(Against Defendant ERNST & YOUNG, LLP)**

27. Plaintiff TOWN OF PARADISE realleges and incorporates under this section every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

28. The TOWN and DEFENDANT bargained for and entered into the CONTRACT.

29. The TOWN performed and satisfied all its duties, promises, obligations, and conditions precedent under the CONTRACT, including paying all amounts owed to DEFENDANT.

30. DEFENDANT breached the CONTRACT by way of its acts and omissions described in this Complaint including but not limited to its failure provide competent services; failure to advise the TOWN of limitations on funding; failure to ensure eligible costs for arborist work were timely submitted to FEMA; failure to manage documents and claims necessary for reimbursement; failure to comply with or implement procedures to comply with FEMA deadlines; and general failure to manage the TOWN's financial accounting needs for full reimbursement from FEMA.

31. The TOWN did not discover, and because DEFENDANT was responsible for managing the FEMA public assistance process could not have reasonably discovered, the full extent of DEFENDANT'S breach until FEMA denied public assistance and all appeals of that decision were exhausted.

32. As a direct and proximate cause of DEFENDANT'S breach, the TOWN has suffered compensatory damages in an amount according to proof at trial but no less than $1,139,180.81, plus attorney's fees as authorized by the CONTRACT. The TOWN is entitled to damages and prays for judgment against each Defendant as set forth below.

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

**SECOND CAUSE OF ACTION**

**(Professional Negligence)**

**(Against Defendant ERNST & YOUNG, LLP)**

33. Plaintiff TOWN OF PARADISE realleges and incorporates under this section every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

34. Commencing around July 1, 2010, the TOWN retained DEFENDANT to provide professional accounting and related services as set forth in the CONTRACT, including professional technical advisory and management services related to "recovery from disasters."

35. As the TOWN's contracted professional, DEFENDANT agreed to use and was required to exercise such skill, prudence and diligence as other member of its profession commonly possess and exercise in the State of California in and around the County of Butte.

36. DEFENDANT's professional services fell below the applicable standard of care for the reasons set forth in this Complaint, among others, including the reasons set forth in the filings before and decision from the United States Civilian Board of Contract Appeals.

37. DEFENDANT'S negligent acts and omissions fell below the standard of care for comparable professional accounting, professional services, and disaster relief management professionals who practice within the community in which the TOWN is located. DEFENDANT'S professional negligence was a substantial factor in causing the TOWN's damages comprised of over at least $1,139,180.81 damages and other incidental and consequential damages, according to proof, that resulted from DEFENDANT's errors.

38. As a direct and proximate cause of DEFENDANT'S professional negligence, Plaintiff has suffered compensatory damages in an amount according to proof at trial, including, without limitation, at least $1,139,180.81. The TOWN could not reasonably have prevented such damages, including, but not limited to, that DEFENDANT made misrepresentations that the continued arborist work was eligible for public assistance from FEMA.

39. At the time DEFENDANT agreed to perform and/or undertook performance of the CONTRACT, DEFENDANT knew or had reason to know that breaches of its applicable standard of care as set forth herein could reasonably be expected to result in the damages described above.

40. The TOWN is entitled to damages according to proof and prays for judgment against each Defendant as set forth below.

**THIRD CAUSE OF ACTION**

**(Negligence)**

**(Against Defendant ERNST & YOUNG, LLP)**

41. Plaintiff TOWN OF PARADISE realleges and incorporates under this section every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

42. At all relevant times, DEFENDANT owed the TOWN a reasonable duty of care, including but not limited to the duty to act as a reasonable professional accounting, professional services, and disaster relief management professional and to exercise reasonable care in managing and implementing the services outlined in the CONTRACT, including timely and properly facilitating complete reimbursement/public assistance from FEMA.

43. DEFENDANT breached its duty of care to the TOWN by defectively and negligently failing to ensure all reimbursable costs eligible for public assistance were timely and properly submitted to FEMA.

44. DEFENDANT'S negligence is the substantial factor in injuring the TOWN. As a direct and proximate result of DEFENDANT'S negligence, as set forth above, the TOWN has been injured by inability to receive public assistance for the continued arborist work for which the TOWN incurred at least $1,139,180.81 in damages.

45. DEFENDANT could and should have foreseen with reasonable certainty, that by failing to manage the TOWN's financial accounting needs for full reimbursement from FEMA, including by failing to ensure all eligible costs for the arborist work were timely submitted to FEMA, the TOWN would suffer damage.

46. The TOWN is entitled to damages flowing from DEFENDANT'S negligence, according to proof at trial.

/ / /

/ / /

/ / /

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

**FOURTH CAUSE OF ACTION**

**(Negligent Misrepresentation)**

**(Against Defendant ERNST & YOUNG, LLP)**

47. Plaintiff TOWN OF PARADISE realleges and incorporates under this section every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

48. The TOWN is informed and believes, and on that basis alleges, that DEFENDANT misrepresented material facts to the TOWN that were untrue. Misrepresentations included but were not limited to representations that the $1,139,180.81 in project management, postage, and arborist costs that the TOWN incurred were eligible for reimbursement by FEMA.

49. The TOWN is informed and believes, and on that basis alleges, that DEFENDANT lacked sufficient or reasonable grounds to believe its representations were true.

50. The TOWN is informed and believes, and on that basis alleges, that DEFENDANT made the representations to induce the reliance of the TOWN.

51. The TOWN was ignorant of the truth of DEFENDANT's misrepresentations and justifiably relied on those misrepresentations, including as a reasonable contractor of the services of a professional accounting, professional services, and disaster relief management firm.

52. As a direct and proximate cause of DEFENDANT's misrepresentations, the TOWN suffered and is entitled to damages in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**

**(Intentional Misrepresentation)**

**(Against Defendant ERNST & YOUNG, LLP)**

53. Plaintiff TOWN OF PARADISE realleges and incorporates under this section every allegation in the foregoing paragraphs of this Complaint as though fully set forth herein.

54. The TOWN is informed and believes, and on that basis alleges, that DEFENDANT intentionally misrepresented material facts to the TOWN that were untrue.

55. DEFENDANT made misrepresentations to the TOWN, including but not limited to representations that the $1,139,180.81 in project management, postage, and arborist costs that the TOWN incurred were eligible for reimbursement by FEMA; that DEFENDANT properly and

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

timely submitted all necessary documents and cost to FEMA to ensure full eligible reimbursement; and that DEFENDANT ensured all processes related to procurement of public assistance from FEMA adhered to FEMA criteria.

56. The TOWN is informed and believes, and on that basis alleges, that DEFENDANT'S representations to the TOWN were false and that DEFENDANT actually knew that its representations were false when it made them, or that it at least made the misrepresentations recklessly without regard for the truth.

57. The TOWN is informed and believes, and on that basis alleges, that DEFENDANT made the representations to induce the reliance of the TOWN.

58. The TOWN was ignorant of the truth of DEFENDANT'S misrepresentations.

59. The TOWN justifiably relied on DEFENDANT'S misrepresentations, including as a reasonable contractor of the services of a professional accounting, professional services, and disaster relief management firm.

60. As a direct and proximate cause of DEFENDANT'S misrepresentations, the TOWN suffered and is entitled to damages in an amount according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff TOWN OF PARADISE prays for judgment against all Defendants as follows:

1. For a judgment that Defendant ERNST & YOUNG, LLP is liable to the TOWN on all causes of action stated in this Complaint;

2. For general and compensatory damages according to proof at trial but no less than $1,139,180.81 plus prejudgment interest.

3. For punitive and exemplary damages pursuant to the Fifth Cause of Action for Intentional Misrepresentation;

4. For reasonable attorneys' fees according to law;

5. For costs and expenses of suit; and

6. For such other and further relief as this Court deems just and proper.

/ / /

Dated: February 11, 2026.

COLE HUBER LLP

By: ***/s/ Samuel L. Emerson***

Scott E. Huber
Samuel L. Emerson
Tyler J. Sherman
Attorneys for Plaintiff TOWN OF PARADISE

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

COLE HUBER LLP
2281 LAVA RIDGE COURT, SUITE 300
ROSEVILLE, CALIFORNIA 95661

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 201, Plaintiff TOWN OF PARADISE hereby demands trial by jury for all the issues so triable.

Dated: February 11, 2026. COLE HUBER LLP

By: ***/s/ Samuel L. Emerson***
Scott E. Huber
Samuel L. Emerson
Tyler J. Sherman
Attorneys for Plaintiff TOWN OF PARADISE

# EXHIBIT 1

**TOWN OF PARADISE**
**PROFESSIONAL SERVICES AGREEMENT**
**WITH ERNST & YOUNG LLP**

This "Agreement" is made as of this 15th day of January 2019, the Town of Paradise, a municipal corporation ("Town"), and Ernst & Young LLP a Limited Liability Partnership ("Contractor").

**RECITALS**

A. Town desires to engage a firm with experience in the entire scope of post disaster recovery management in order to development a strategic plan for financial recovery.

B. Town desires to retain a responsible and qualified firm to conduct the services described above in accordance with the Scope of Services as more particularly set forth in Exhibit A to this Agreement.

C. Contractor represents to Town that it is a responsible firm composed of highly trained professionals with the ability and skills necessary to successfully perform the services hereunder under the terms and conditions of this Agreement.

D. The parties have negotiated upon the terms pursuant to which Contractor will provide such services and have reduced such terms to writing.

**AGREEMENT**

**NOW, THEREFORE**, Town and Contractor agree as follows:

**1. SCOPE OF SERVICES**

Contractor shall provide to Town the services described in Exhibit A ("Scope of Services") Contractor shall provide these services at the time, place, and in the manner specified in Exhibit A. Exhibit A is attached hereto for the purpose of defining the manner and scope of services to be provided by Contractor and is not intended to, and shall not be construed so as to, modify or expand the terms, conditions or provisions contained in this Agreement. In the event of any conflict between this Agreement and any terms or conditions of any document prepared or provided by Contractor and made a part of this Agreement, including without limitation any document relating to the scope of services or payment therefor, the terms of this Agreement shall control and prevail.

**2. COMPENSATION**

a. Town shall pay Contractor for services rendered pursuant to this Agreement at the rates, times and in the manner set forth in Exhibit B. Contractor shall submit monthly statements to Town which shall itemize the services performed as of the date of the statement and set forth a progress report, including work accomplished during the period, percent of each task completed, and planned effort for the next period. Invoices shall identify personnel

who have worked on the services provided, the number of hours each worked during the period covered by the invoice, the hourly rate for each person, and the percent of the total project completed, consistent with the rates and amounts shown in Exhibit B.

b. The payments prescribed herein shall constitute all compensation to Contractor for all costs of services, including, but not limited to, direct costs of labor of employees engaged by Contractor, travel expenses, telephone charges, copying and reproduction, computer time, and any and all other costs, expenses and charges of Contractor, its agents and employees. In no event shall Town be obligated to pay late fees or interest, whether or not such requirements are contained in Contractor's invoice.

c. Notwithstanding any other provision in this Agreement to the contrary, the total maximum compensation to be paid for the satisfactory accomplishment and completion of all services to be performed hereunder shall in no event exceed the sum of five hundred thousand dollars ($500,000.00) Contractor acknowledges and agrees that it exceeds the maximum compensation under this Agreement at its own risk. The Town's Administrative Services Director is authorized to pay all proper claims.

**3. DOCUMENTATION; RETENTION OF MATERIALS; ACCESS TO RECORDS**

a. Contractor shall maintain adequate documentation to substantiate all charges as required under Section 2 of this Agreement.

b. Contractor shall keep and maintain full and complete documentation and accounting records concerning all extra or special services performed by it that are compensable by other than an hourly or flat rate.

c. Contractor shall maintain the records and any and all other records pertinent to this Agreement for a period of four (4) years after completion of all services hereunder.

d. Contractor agrees to provide Town, the State of California, the Federal Emergency Management Agency ("FEMA") Administrator, the Comptroller General of the United States, and any or all of their authorized representatives, access to any books, documents, papers, and records of Contractor which are pertinent to this Agreement for the purposes of making audits, examinations, excerpts, and transcriptions.

e. Contractor agrees to permit all or any of the foregoing parties to reproduce by any means whatsoever or to copy excerpts and transcriptions as reasonably needed.

f. Contractor agrees to provide the FEMA Administrator or his authorized representatives access to work sites pertaining to the services being performed under this Agreement.

**4. INDEMNITY**

a. Contractor shall, to the fullest extent permitted by law, indemnify, protect, defend and hold harmless Town, and its employees, officials and agents ("Indemnified Parties") from all claims, demands, costs or liability (including liability for claims, suits, actions, arbitration proceedings, administrative proceedings, regulatory proceedings, losses, expenses or costs of any kind, interest, defense costs, and expert witness fees), that arise out of, pertain to, or relate

to the negligence, recklessness, or willful misconduct of Contractor, its officers, employees, or agents, in said performance of professional services under this Agreement, excepting only liability arising from the sole negligence, active negligence or intentional misconduct of Town.

b. The existence or acceptance by Town of any of the insurance policies or coverages described in this Agreement shall not affect or limit any of Town's rights under this Section 4, nor shall the limits of such insurance limit the liability of Contractor hereunder. This Section 4 shall not apply to any intellectual property claims, actions, lawsuits or other proceedings subject to the provisions of Section 18(b), below. The provisions of this Section 4 shall survive any expiration or termination of this Agreement.

**5. INSURANCE**

a. Contractor shall maintain in full force and effect all of the insurance coverage described in, and in accordance with, Attachment One, "Insurance Requirements." Maintenance of the insurance coverage set forth in Attachment One is a material element of this Agreement and a material part of the consideration provided by Contractor in exchange for Town's agreement to make the payments prescribed hereunder. Failure by Contractor to (i) maintain or renew coverage, (ii) provide Town notice of any changes, modifications, or reductions in coverage, or (iii) provide evidence of renewal, may be treated by Town as a material breach of this Agreement by Contractor, whereupon Town shall be entitled to all rights and remedies at law or in equity, including but not limited to immediate termination of this Agreement. Notwithstanding the foregoing, any failure by Contractor to maintain required insurance coverage shall not excuse or alleviate Contractor from any of its other duties or obligations under this Agreement. In the event Contractor, with approval of Town pursuant to Section 6 below, retains or utilizes any subcontractors in the provision of any services to Town under this Agreement, Contractor shall assure that any such subcontractor has first obtained, and shall maintain, all of the insurance coverages set forth in the Insurance Requirements in Attachment One.

b. Contractor agrees that any available insurance proceeds broader than or in excess of the coverages set forth in the Insurance Requirements in Attachment One shall be available to the additional insureds identified therein.

c. Contractor agrees that the insurance coverages and limits provided under this Agreement are the greater of: (i) the coverages and limits specified in Attachment One, or (ii) the broader coverages and maximum limits of coverage of any insurance policy or proceeds available to the name insureds.

**6. ASSIGNMENT**

Contractor shall not assign any rights or duties under this Agreement to a third party without the express prior written consent of Town, in Town's sole and absolute discretion. Contractor agrees that the Town shall have the right to approve any and all subcontractors to be used by Contractor in the performance of this Agreement before Contractor contracts with or otherwise engages any such subcontractors.

**7. NOTICES**

Except as otherwise provided in this Agreement, any notice, submittal or communication required or permitted to be served on a party, shall be in writing and may be

served by personal delivery to the person or the office of the person identified below. Service may also be made by mail, by placing first-class postage, and addressed as indicated below, and depositing in the United States mail to:

| Town Representative: | Contractor Representative: |
|---|---|
| Lauren Gill, Town Manager<br>Town of Paradise<br>5555 Skyway<br>Paradise, CA 95969 | Allen Melton<br>2323 Victory Avenue, Suite 2000<br>Dallas, TX 75219 |

**8. INDEPENDENT CONTRACTOR**

a. It is understood and agreed that Contractor (including Contractor's employees) is an independent contractor and that no relationship of employer-employee exists between the parties hereto for any purpose whatsoever. Neither Contractor nor Contractor's assigned personnel shall be entitled to any benefits payable to employees of Town. Town is not required to make any deductions or withholdings from the compensation payable to Contractor under the provisions of this Agreement, and Contractor shall be issued a Form 1099 for its services hereunder. As an independent contractor, Contractor hereby agrees to indemnify and hold Town harmless from any and all claims that may be made against Town based upon any contention by any of Contractor's employees or by any third party, including but not limited to any state or federal agency, that an employer-employee relationship or a substitute therefor exists for any purpose whatsoever by reason of this Agreement or by reason of the nature and/or performance of any services under this Agreement.

b. It is further understood and agreed by the parties hereto that Contractor, in the performance of Contractor's obligations hereunder, is subject to the control and direction of Town as to the designation of tasks to be performed and the results to be accomplished under this Agreement, but not as to the means, methods, or sequence used by Contractor for accomplishing such results. To the extent that Contractor obtains permission to, and does, use Town facilities, space, equipment or support services in the performance of this Agreement, this use shall be at the Contractor's sole discretion based on the Contractor's determination that such use will promote Contractor's efficiency and effectiveness. Except as may be specifically provided elsewhere in this Agreement, the Town does not require that Contractor use Town facilities, equipment or support services or work in Town locations in the performance of this Agreement.

c. If, in the performance of this Agreement, any third persons are employed by Contractor, such persons shall be entirely and exclusively under the direction, supervision, and control of Contractor. Except as may be specifically provided elsewhere in this Agreement, all terms of employment, including hours, wages, working conditions, discipline, hiring, and discharging, or any other terms of employment or requirements of law, shall be determined by Contractor. It is further understood and agreed that Contractor shall issue W-2 or 1099 Forms for income and employment tax purposes, for all of Contractor's assigned personnel and subcontractors.

d. The provisions of this Section 8 shall survive any expiration or termination of this Agreement. Nothing in this Agreement shall be construed to create an exclusive relationship between Town and Contractor. Contractor may represent, perform services for, or be employed by such additional persons or companies as Contractor sees fit.

**9. ADDITIONAL SERVICES**

Changes to the Scope of Services shall be by written amendment to this Agreement and shall be paid in accordance with the rates set forth in Exhibit B, or paid as otherwise agreed upon by the parties in writing prior to the provision of any such additional services.

**10. SUCCESSORS AND ASSIGNS**

Town and Contractor each binds itself, its partners, successors, legal representatives and assigns to the other party to this Agreement and to the partners, successors, legal representatives and assigns of such other party in respect of all promises and agreements contained herein.

**11. TERM, SUSPENSION, TERMINATION FOR CONVENIENCE AND CAUSE**

a. This Agreement shall become effective on the date that it is made, set forth on the first page of the Agreement, and shall continue in effect until both parties have fully performed their respective obligations under this Agreement, unless sooner terminated as provided herein.

b. Town shall have the right at any time to temporarily suspend Contractor's performance hereunder, in whole or in part, by giving a written notice of suspension to Contractor. If Town gives such notice of suspension, Contractor shall immediately suspend its activities under this Agreement, as specified in such notice.

c. Town shall have the right to terminate this Agreement for convenience at any time upon written notice of termination to Contractor. Upon such termination, Contractor shall submit to Town an itemized statement of services performed as of the date of termination in accordance with Section 2 of this Agreement. These services may include both completed work and work in progress at the time of termination. Town shall pay Contractor for any services for which compensation is owed; provided, however, Town shall not in any manner be liable for lost profits that might have been made by Contractor had the Agreement not been terminated or had Contractor completed the services required by this Agreement. Contractor shall promptly deliver to Town all documents related to the performance of this Agreement in its possession or control. All such documents shall be the property of Town without additional compensation to Contractor.

d. Town shall have the right to terminate this Agreement for cause upon written notice to Contractor following an Event of Default. The following shall be "Events of Default" hereunder and the term "Event of Default" shall mean, whenever it is used herein, any one or more of the following events:

(i) The failure by Contractor to perform any obligation under this Agreement, which by its nature Contractor has no capacity to cure;

(ii) The failure by Contractor to perform any other obligation under this Agreement, if the failure has continued for a period of ten (10) days after the Town demands in writing that Contractor cure the failure. If, however, by its nature the failure cannot be cured within ten (10) days, Contractor may have a longer period as is necessary to cure the failure, but this is

conditioned upon Contractor's promptly commencing to cure within the ten (10) day period and thereafter diligently completing the cure. Contractor shall indemnify and defend the Town against any liability, claim, damage, loss, or penalty that may be threatened or may in fact arise from that failure during the period the failure is uncured;

(iii) Any of the following: A general assignment by Contractor for the benefit of Contractor's creditors; any voluntary filing, petition, or application by Contractor under any law relating to insolvency or bankruptcy, whether for a declaration of bankruptcy, a reorganization, an arrangement, or otherwise;

(iv) The appointment of a trustee or receiver to take possession of all or substantially all of Contractor's assets; or the attachment, execution or other judicial seizure of all or substantially all of Contractor's assets or of Contractor's interest in this Agreement, unless the appointment or attachment, execution, or seizure is discharged within thirty (30) days; or the involuntary filing against Contractor, or any general partner of Contractor if Contractor is a partnership, or

(a) a petition to have Contractor, or any partner of Contractor if Contractor is a partnership, declared bankrupt, or

(b) a petition for reorganization or arrangement of Contractor under any law relating to insolvency or bankruptcy, unless, in the case of any involuntary filing, it is dismissed within sixty (60) days.

(v) Any representation or warranty related to this Agreement made by any agent of Contractor is determined to have been false or misleading in any material respect at the time made.

## 12. REMEDIES UPON DEFAULT

This Section 12 shall apply in the event the amount payable under this Agreement exceeds the simplified acquisition threshold as determined pursuant to section 1908 of title 41 of the United States Code, or $150,000, whichever amount is greater.

a. Remedies on Event of Default. Upon the occurrence of an Event of Default as defined in Section 11, Town shall have the right upon written notice to Contractor, in addition to any other rights or remedies available to Town at law or in equity, to:

(i) Terminate this Agreement and all rights of Contractor under this Agreement, (ii) Continue this Agreement without terminating the Agreement, or (iii) Temporarily suspend Contractor's performance hereunder, in whole or in part, and recover from Contractor the aggregate sum of;

(1) any amount necessary to compensate Town for all the detriment caused by Contractor's failure to perform its obligations or that, in the ordinary course of things, would be likely to result from its failure; and

(2) all other amounts in addition to or in lieu of those previously set out as may be permitted from time to time by applicable California or Federal law.

(b) None of the previous remedial actions, alone or in combination, shall be construed as an election by Town to terminate this Agreement unless Town has in fact given Contractor written notice that this Agreement is terminated or unless a court of competent jurisdiction decrees termination of this Agreement. If Town takes any of the previous remedial actions without terminating this Agreement Town may nevertheless at any later time terminate this Agreement by written notice to Contractor.

(c) After the occurrence of an Event of Default, the Town, in addition to or in lieu of exercising other remedies, may, but without any obligation to do so, cure the breach underlying the Event of Default for the account and at the expense of Contractor. However, Town must by prior notice first allow Contractor a reasonable opportunity to cure, except in cases of emergency, where Town may proceed without prior notice to Contractor. Contractor shall, upon demand, immediately reimburse Town for all costs, including costs of settlements, defense, court costs, and attorneys' fees that Town may incur in the course of any cure.

(d) No security or guaranty for the performance of Contractor's obligations that Town may now or later hold shall in any way constitute a bar or defense to any action initiated by Town for enforcement of any obligation of Contractor or for the recovery of damages caused by an Event of Default.

(e) Except where this is inconsistent with or contrary to any provisions of this Agreement, no right or remedy conferred upon or reserved to Town is intended to be exclusive of any other right or remedy, or any right or remedy given or now or later existing at law or in equity or by statute. Except to the extent that Town may have otherwise agreed in writing, no waiver by Town of any violation or nonperformance by Contractor of any obligations, agreements, or covenants under this Agreement shall be deemed to be a waiver of any subsequent violation or nonperformance of the same or any other covenant, agreement, or obligation, nor shall any forbearance by Town to exercise a remedy for any violation or nonperformance by Contractor be deemed a waiver by Town of the rights or remedies with respect to that violation or nonperformance.

(f) Indemnification. The exercise of Town of any one or more of the remedies set forth in this Section 12 shall not affect the rights of Town or the obligations of Contractor under the indemnity provisions set forth in Section 4 hereof.

(g) No Remedy Exclusive. No remedy herein conferred upon or reserved to Town is intended to be exclusive and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. No delay or omission to exercise any right or power accruing upon any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle Town to exercise any remedy reserved to it in this subsection it shall not be necessary to give any notice, other than such notice as may be required in this Section or by law.

(h) Notice of Default. Contractor agrees that, as soon as is practicable, and in any event within ten (10) days after such event, Contractor will furnish Town notice of any event which is an Event of Default under this Agreement, or which with the giving of notice or the passage of time or both could constitute an Event of Default under this Agreement, which has occurred and is continuing on the date of such notice, which notice shall set forth the nature of such event and the action which Contractor proposes to take with respect thereto. Each subcontract shall include

the provisions of this subsection (h) to require each subcontractor of Contractor to provide Town notice of any Event of Subcontractor Default in the same manner as required hereunder of Contractor for an Event of Default.

**13. TIME OF PERFORMANCE**

The services described herein shall be provided during the period, or in accordance with the schedule, set forth in Exhibit A. Contractor shall complete all the required services and tasks and complete and tender all deliverables to the reasonable satisfaction of Town, not later than December 31, 2024.

**14. STANDARD OF PERFORMANCE**

Contractor shall perform all services performed under this Agreement in the manner and according to the standards currently observed by a competent practitioner of Contractor's profession in California. All products of whatsoever nature that Contractor delivers to Town shall be prepared in a professional manner and conform to the standards of quality normally observed by a person currently practicing in Contractor's profession, and shall be provided in accordance with any schedule of performance. Contractor shall assign only competent personnel to perform services under this Agreement. Contractor shall notify Town in writing of any changes in Contractor's staff assigned to perform the services under this Agreement prior to any such performance. In the event that Town, at any time, desires the removal of any person assigned by Contractor to perform services under this Agreement, because Town, in its sole discretion, determines that such person is not performing in accordance with the standards required herein, Contractor shall remove such person immediately upon receiving notice from Town of the desire of Town for the removal of such person.

**15. CONFLICTS OF INTEREST**

Contractor covenants that neither it, nor any officer or principal of its firm, has or shall acquire any interest, directly or indirectly, that would conflict in any manner with the interests of Town or that would in any way hinder Contractor's performance of services under this Agreement. Contractor further covenants that in the performance of this Agreement, no person having any such interest shall be employed by it as an officer, employee, agent or subcontractor, without the written consent of Town. Contractor agrees to avoid conflicts of interest or the appearance of any conflicts of interest with the interests of Town at all times during the performance of this Agreement.

**16. CONFLICT OF INTEREST REQUIREMENTS**

a. **Generally.** The Town's Conflict of Interest Code requires that individuals who qualify as "consultants" under the Political Reform Act, California Government Code sections 87200 *et seq.*, comply with the conflict of interest provisions of the Political Reform Act and the Town's Conflict of Interest Code, which generally prohibit individuals from making or participating in the making of decisions that will have a material financial effect on their economic interests. The term "consultant" generally includes individuals who make governmental decisions or who serve in a staff capacity.

b. **Conflict of Interest Statements**. The individual(s) who will provide services or perform work pursuant to this Agreement are "consultants" within the meaning of the

Political Reform Act and the Town's Conflict of Interest Code:
__X__ yes _____ no

If "yes" is checked by the Town, Contractor shall cause the following to occur within 30 days after execution of this Agreement:

(1) Identify the individuals who will provide services or perform work under this Agreement as "consultants;" and

(2) Cause these individuals to file with the Town Clerk the assuming office statements of economic interests required by the Town's Conflict of Interest Code.

Thereafter, throughout the term of the Agreement, Contractor shall cause these individuals to file with the Town Clerk annual statements of economic interests, and "leaving office" statements of economic interests, as required by the Town's Conflict of Interest Code.

The above statements of economic interests are public records subject to public disclosure under the California Public Records Act. The Town may withhold all or a portion of any payment due under this Agreement until all required statements are filed.

**17. CONFIDENTIALITY OF TOWN INFORMATION**

During performance of this Agreement, Contractor may gain access to and use Town information regarding inventions, machinery, products, prices, apparatus, costs, discounts, future plans, business affairs, governmental affairs, processes, trade secrets, technical matters, systems, facilities, customer lists, product design, copyright, data, and other vital information (hereafter collectively referred to as "Town Information") that are valuable, special and unique assets of the Town. Contractor agrees to protect all Town Information and treat it as strictly confidential, and further agrees that Contractor shall not at any time, either directly or indirectly, divulge, disclose or communicate in any manner any Town Information to any third party without the prior written consent of Town. In addition, Contractor shall comply with all Town policies governing the use of the Town network and technology systems. A violation by Contractor of this Section 17 shall be a material violation of this Agreement and shall justify legal and/or equitable relief.

**18. CONTRACTOR INFORMATION**

a. Town shall have full ownership and control, including ownership of any copyrights, of all information prepared, produced, or provided by Contractor pursuant to this Agreement. In this Agreement, the term "information" shall be construed to mean and include: any and all work product, submittals, reports, plans, specifications, and other deliverables consisting of documents, writings, handwritings, typewriting, printing, photostatting, photographing, computer models, and any other computerized data and every other means of recording any form of information, communications, or representation, including letters, works, pictures, drawings, sounds, or symbols, or any combination thereof. Contractor shall not be responsible for any unauthorized modification or use of such information for other than its intended purpose by Town.

b. Contractor shall fully defend, indemnify and hold harmless Town, its officers and employees, and each and every one of them, from and against any and all claims,

actions, lawsuits or other proceedings alleging that all or any part of the information prepared, produced, or provided by Contractor pursuant to this Agreement infringes upon any third party's trademark, trade name, copyright, patent or other intellectual property rights. Town shall make reasonable efforts to notify Contractor not later than ten (10) days after Town is served with any such claim, action, lawsuit or other proceeding, provided that Town's failure to provide such notice within such time period shall not relieve Contractor of its obligations hereunder, which shall survive any termination or expiration of this Agreement.

c. All proprietary and other information received from Contractor by Town, whether received in connection with Contractor's proposal, will be disclosed upon receipt of a request for disclosure, pursuant to the California Public Records Act; provided, however, that, if any information is set apart and clearly marked "trade secret" when it is provided to Town, Town shall give notice to Contractor of any request for the disclosure of such information. Contractor shall then have five (5) days from the date it receives such notice to enter into an agreement with the Town, satisfactory to the Town Attorney, providing for the defense of, and complete indemnification and reimbursement for all costs (including plaintiff's attorneys' fees) incurred by Town in any legal action to compel the disclosure of such information under the California Public Records Act. Contractor shall have sole responsibility for defense of the actual "trade secret" designation of such information.

d. The parties understand and agree that any failure by Contractor to respond to the notice provided by Town and/or to enter into an agreement with Town, in accordance with the provisions of subsection c, above, shall constitute a complete waiver by Contractor of any rights regarding the information designated "trade secret" by Contractor, and such information shall be disclosed by Town pursuant to applicable procedures required by the Public Records Act.

**18. FEDERAL PROVISIONS**

Contractor shall comply with the provisions in Exhibit C to this Agreement. In the event of a conflict between any provision in Exhibit C and any other provision of this Agreement, the more stringent provision shall control and prevail.

**19. GENERAL PROVISIONS**

a. Entire Agreement. This Agreement contains the entire agreement between the parties. Any and all verbal or written agreements made prior to the date of this Agreement are superseded by this Agreement and shall have no further effect.

b. Modification. No modification or change to the terms of this Agreement will be binding on a party unless in writing and signed by an authorized representative of that party.

c. Compliance with Laws. Contractor shall perform all services described herein in compliance with all applicable federal, state and local laws, rules, regulations, and ordinances, including but not limited to, (i) the Americans with Disabilities Act of 1990 (42 U.S.C. 12101, et seq.) ("ADA"), and any regulations and guidelines issued pursuant to the ADA; and (ii) Labor Code sections 1720, *et seq.*, which require prevailing wages (in accordance with DIR determinations at www.dir.ca.gov) be paid to any employee performing work covered by Labor Code sections 1720 *et seq*. Contractor shall pay to Town when due all business taxes payable by Contractor under the provisions of Chapter 6-04 of the Paradise Town Code. Town may deduct

any delinquent business taxes, and any penalties and interest added to the delinquent taxes, from its payments to Contractor.

d. Discrimination Prohibited. With respect to the provision of services under this Agreement, Contractor agrees not to discriminate against any person because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of that person.

e. Governing Law; Venue. This Agreement shall be governed, construed and enforced in accordance with the laws of the State of California and Federal law. Venue of any litigation arising out of or connected with this Agreement shall lie in the state trial court in Butte County in the State of California or the United States District Court, Northern District of California, and the parties consent to jurisdiction over their persons and over the subject matter of any such litigation in such courts, and consent to service of process issued by such courts.

f. Waiver of Rights. Neither Town acceptance of, or payment for, any service or performed by Contractor, shall be construed as a waiver of any provision of this Agreement, nor as a waiver of any other default, breach or condition precedent or any other right hereunder.

g. Incorporation of Attachments and Exhibits. The attachments and exhibits to this Agreement are incorporated and made part of this Agreement, subject to terms and provisions herein contained.

**20. AUTHORITY; SIGNATURES REQUIRED FOR CORPORATIONS**

Contractor hereby represents and warrants to Town that it is (a) a duly organized and validly existing Limited Liability Partnership, formed and in good standing under the laws of the State of Delaware, (b) has the power and authority and the legal right to conduct the business in which it is currently engaged, and (c) has all requisite power and authority and the legal right to consummate the transactions contemplated in this Agreement. Contractor hereby further represents and warrants that this Agreement has been duly authorized, and when executed by the signatory or signatories listed below, shall constitute a valid agreement binding on Contractor in accordance with the terms hereof.

If this Agreement is entered into by a corporation, it shall be signed by two corporate officers, one from each of the following two groups: a) the chairman of the board, president or any vice-president; b) the secretary, any assistant secretary, chief financial officer, or any assistant treasurer. The title of the corporate officer shall be listed under the signature.

Executed as of the day and year first above stated. Allen Melton

**CONTRACTOR:**

Name of Firm: Ernst & Young LLP

TYPE OF BUSINESS ENTITY *(check one)*:

_____ Individual/Sole Proprietor
__x__ Partnership
_____ Corporation
_____ Limited Liability Company
_____ Other (please specify: __________)

*Signatures of Authorized Persons*:

By: [signature]

Print Name: Allen Melton

Title: Partner

By: ______________________

Print Name: ______________________

Title: ______________________

Town of Paradise Business Tax Cert. No.

______________________

**TOWN OF PARADISE**
a Municipal Corporation

By: [signature]

Print Name: Lauren Gill

Title: Town Manager

APPROVED AS TO FORM:

[signature]
Office of the Town Attorney

ATTEST: January 28, 2019

Dina Volenski
Town Clerk Dina Volenski

Attachments:
Attachment One - Insurance Requirements
Exhibit A - Scope of Services
Exhibit B - Compensation
Exhibit C – Federal Provisions

**ATTACHMENT ONE**
**INSURANCE REQUIREMENTS FOR**
**PROFESSIONAL SERVICES AGREEMENTS**

**A. Insurance Policies:** Contractor shall, at all times during the terms of this Agreement, maintain and keep in full force and effect, the following policies of insurance with minimum coverage as indicated below and issued by insurers with AM Best ratings of no less than A-:VI or otherwise acceptable to the Town.

| | Insurance | Minimum Coverage Limits | Additional Coverage Requirements |
|---|---|---|---|
| 1. | Commercial general liability | $ 1 million per occurrence<br>$ 2 million aggregate | Coverage must be at least as broad as ISO CG 00 01 and must include completed operations coverage. If insurance applies separately to a project/location, aggregate may be equal to per occurrence amount. **Coverage may be met by a combination of primary and umbrella or excess insurance but umbrella and excess shall provide coverage at least as broad as specified for underlying coverage. Coverage shall not exclude subsidence.** |
| 2. | Business auto coverage | $ 1 million | ISO Form Number CA 00 01 covering any auto (Code 1), or if Contractor has no owned autos, hired, (Code 8) and non-owned autos (Code 9), with limit no less than $ 1 million per accident for bodily injury and property damage. |
| 3. | Professional liability (E&O) | $ 1 million per claim<br>$ 2 million aggregate | Contractor shall provide on a policy form appropriate to profession. If on a claims made basis, Insurance must show coverage date prior to start of work and it must be maintained for three years after completion of work. |
| 4. | Workers' compensation and employer's liability | $ 1 million | As required by the State of California, with Statutory Limits and Employer's Liability Insurance with limit of no less than $ 1 million per accident for bodily injury or disease. The Workers' Compensation policy shall be endorsed with a waiver of subrogation in favor of the Town for all work performed by the Contractor, its employees, agents and subcontractors. |

**B. Endorsements:**

1. All policies shall provide or be endorsed to provide that coverage shall not be canceled, except after prior written notice has been provided to the Town in accordance with the policy provisions.

2. Liability, umbrella and excess policies shall provide or be endorsed to provide the following:

   a. For any claims related to this project, Contractor's insurance coverage shall be primary and any insurance or self-insurance maintained by Town shall be excess of the Contractor's insurance and shall not contribute with it; and,

   b. **The Town of Paradise, its officers, agents, employees and volunteers are to be covered as additional insureds on the CGL policy**. General liability coverage can be provided in the form of an endorsement to Contractor's insurance at least as broad as ISO Form CG 20 10 11 85 or if not available, through the addition of both CG 20 10 and CG 20 37 if a later edition is used.

C. **Verification of Coverage and Certificates of Insurance:** Contractor shall furnish Town with original certificates and endorsements effecting coverage required above. Certificates and endorsements shall make reference to policy numbers. All certificates and endorsements are to be received and approved by the Town before work commences and must be in effect for the duration of the Agreement. The Town reserves the right to require complete copies of all required policies and endorsements.

D. **Other Insurance Provisions:**

1. No policy required by this Agreement shall prohibit Contractor from waiving any right of recovery prior to loss. Contractor hereby waives such right with regard to the indemnitees.

2. All insurance coverage amounts provided by Contractor and available or applicable to this Agreement are intended to apply to the full extent of the policies. Nothing contained in this Agreement limits the application of such insurance coverage. Defense costs must be paid in addition to coverage amounts.

3. Policies containing any self-insured retention (SIR) provision shall provide or be endorsed to provide that the SIR may be satisfied by either Contractor or Town. Self-insured retentions above $10,000 must be approved by Town. At Town's option, Contractor may be required to provide financial guarantees.

4. Sole Proprietors must provide a representation of their Workers' Compensation Insurance exempt status.

5. Town reserves the right to modify these insurance requirements while this Agreement is in effect, including limits, based on the nature of the risk, prior experience, insurer, coverage, or other special circumstances.

**EXHIBIT A**

**SCOPE OF SERVICES**

**A. Time of Performance**

1. The services described herein shall be provided during the period January 15, 2019 to December 31, 2024. The Contractor shall complete all the required services and tasks and complete and tender all deliverables to the reasonable satisfaction of the Town, not later than December 31, 2024.

**B. General Scope of Services**

1. Provide technical advisory services related to recovery from disasters, specifically the Camp Fire and any future disasters.

2. Develop and implement strategies and technical advice to secure funding and claiming opportunities through insurance, Federal and State programs, and special legislation in order to continue government services to the Town of Paradise during the recovery process.

3. Ability to increase and decrease staff and expertise assigned to the engagement quickly and efficiently.

4. Develop and submit federal grant applications (Public Assistance, Hazard Mitigation and/or Community Development Block Grant Disaster Recovery) assist in identifying and capturing eligible costs, reconcile invoices.

5. Develop and implement strategies designated to maximize federal and State assistance.

6. Provide expert programmatic and policy advice on State and federal disaster relief programs.

7. Provide procurement assistance to the Town, interfacing with internal staff, to ensure procurement processes adhere to FEMA federal grants recovery criteria.

8. Manage financial accounting needs, including documentation capabilities needed for full eligible reimbursement; ability to perform audit capabilities as necessary.

9. Provide support for strategic planning and coordination of all recovery efforts.

10. Review contracts and purchasing documentation to ensure cost recovery.

11. Assist the Town by accompanying Town leadership and staff in attending meetings with Butte County, FEMA, Cal OES or other agencies as may be necessary.

12. Work with Town staff to compile a comprehensive list of disaster related repairs, damage mitigation efforts, possible improvements and collect and compile cost documentation.

13. Provide assistance and oversight to the Town with claims or claiming process (insurance and government programs).

14. Continued interaction and communication with Town, State and federal damage assessment teams.

15. Work with the Town to resolve disputes with FEMA, Cal OES, or other agencies as may be necessary, including but not limited to the preparation of appeals.

16. Provide education and training to Town staff that will or may be involved with the various aspects of disaster recovery, including FEMA documentation requirements, FEMA Public Assistance Program as well as other State and federal programs, as applicable.

17. Provide technical expertise and knowledge related to the Stafford Act.

18. Ensure all eligible costs/damages have been identified and reported to insurance, FEMA and Cal OES in an appropriate and timely manner.

19. Provide QA/QC support and general eligibility guidance for all State and federal grant programs.

20. Create and maintain critical contract lists and project tracking mechanisms to include timelines and deadlines.

21. Coordinate and manage deliverables with insurance, FEMA, and CAL OES.

**C. Detailed Scope of Services**

1. Provide guidance in recovering reimbursement for the repair and potential replacement of the loss of critical infrastructure.

2. Assist the Town with establishing programmatic document control, establishing a file retention system and data management processes to ensure disaster records are complete and ready for audit.

3. Assist and/or represent the Town with the implementation of preliminary damage assessments (PDAs) to document the impact and magnitude of the disaster.

4. Assist the Town in providing damage site assessment and project worksheet formulation.

5. Assist the Town in insurance claim preparation, coordination and advice through insurance adjustment process.

6. Assist the Town during Applicant's Briefings with FEMA and the State, assisting with relationship development, requesting additional programmatic details and clarifications that will assist the Town during the grant process.

7. Collaborate with the Town on project formulation, including damage assessments (field team assessment of damages including a comprehensive list of damaged structures, contents, etc.); Information gathering (photo-document damages, gather records, drawings, insurance policies, historical photos/videos, etc.); project development (define both small and large projects' scope, size, and damages, including cost estimating, that will be the basis of each Project Worksheet); project submittals (draft and submit small and large project PWs to CAL OES/FEMA).

8. Assist the Town with development of scope and bid packages that align with the project worksheet scope of work and damages.

9. Support overall Project Worksheet formulation efforts to include development of damage descriptions, scopes of work, and valid cost estimates.

10. Assist the Town with Completion and submission of FEMA Project Worksheets.

11. Assist in compiling and summarizing Category A through G costs and preparing support documentation for presentation to FEMA and the State.

12. Compile appropriate data and then categorize Town losses: FEMA Categories A through G.

13. Assist with the management of FEMA and/or other federal grants and Cal OES coordination along with the Town, arranging for routine status/action plan meetings, establishing priorities, scope changes and updates at meetings.

14. Assist the Town with CAL OES/FEMA and/or other federal grant quarterly reporting.

15. Generate time extension requests to FEMA and/or other federal grants and CAL OES when necessary so that PW eligibility is not forfeited.

16. Generate PWs amendments requesting changes as agreed through resolution discussions or first appeals.

17. Assist with the submittal of first and second appeals to FEMA should the Town disagree with the FEMA formulated PWs.

18. Assist the Town with the closeout of PWs, both large and small, including the review and preparation of final closeout packages for completed work.

19. Develop improved and/or alternate project requests for CAL OES and FEMA and/or other federal grants.

20. Develop Sandy Recovery Improvement Act (SRIA) alternative arrangement projects as soon as possible to streamline the recovery process within established FEMA timelines.

21. Identify and prepare hazard mitigation proposals, grant applications, and benefit cost analysis for interested residential property and non-residential owners.

22. Provide post-award grant administration to include intake of required property specific information and necessary forms including a voluntary participation notice, submission of environmental and historical compliance information, individual maps and photos.

23. Identify potential improvements and maximize public assistance 404 and 406 Mitigation funding.

24. Assist in identifying and evaluating opportunities for hazard mitigation programs under FEMA 404 and 406 Hazard Mitigation.

25. Develop Section 406 Hazard Mitigation Proposals where mitigation actions can minimize future disaster impacts.

26. Develop Section 404 Hazard Mitigation strategies providing staff experienced in the use of FEMA BCA tools and methodologies that can minimize future disaster impacts.

27. Prepare Section 404 and 406 grant HMP program Notices of Interest (NOIs) and assist in filing NOIs.

28. Prepare Section 404 and 406 grant program grant applications and assist in filing such applications.

29. Coordinate and interface with engineering and design efforts for the repair and/or reconstruction of damaged infrastructure that will comply with FEMA eligibility and cost reasonableness, including oversight of the repair and/or reconstruction efforts to ensure FEMA's Public Assistance grant is clearly defined and implemented.

30. Create and maintain engineering plans, projections, and cost estimates for projects that require that level of detail.

31. Assist with the procurement of architectural and/or design firms. Guide the selected firm(s) through FEMA's Public Assistance grant and/or other federal grants funding requirements and criteria.

32. Provide technical expertise and knowledge regarding 24 CFR 570 including development of an unmet needs assessments for all HUD related programs.

33. Assist in developing a HUD Action Plan for Disaster Recovery and amendments.

34. Assist with HUD grant and activity project management, policies and contractor oversight.

35. Assist with HUD grant and project reporting and maintaining files.

36. Provide technical assistance regarding HUD requirements regarding public facilities including FEMA match programs, Stafford Act and Davis Bacon Act requirements.

37. Provide technical assistance relative to eligible CDBG activities including environmental reviews.

# EXHIBIT B

## COST PROPOSAL FORM

The Town prefers to issue-fixed price or cost reimbursement type agreements. All non-labor related costs and other than direct costs will be billed to the Town at cost without mark-up.

| POSITIONS | HOURLY RATES |
|---|---|
| Project Executive | $ 298.00 |
| Subject Matter Expert | $ 279.00 |
| Project Manager | $ 279.00 |
| Project Accountant | $ 253.00 |
| Senior Closeout Specialist | $ 253.00 |
| Closeout Specialist | $ 186.00 |
| Other: Manager | $ 253.00 |
| Other: Senior Consultant | $ 186.00 |
| Other: Staff Consultant | $ 133.00 |

OTHER REQUIRED POSITIONS

Proposer may include other positions, with hourly rates and attach a job description and required years of experience for each position.

# EXHIBIT C

# FEDERAL PROVISIONS

## A. Definitions

1. Government means the United States of America and any executive department or agency thereof.

2. FEMA means the Federal Emergency Management Agency.

3. Third Party Subcontract means a subcontract at any tier entered into by Contractor or subcontractor, financed in whole or in part with Federal assistance originally derived from the Federal Emergency Management Agency.

## B. Federal Changes

1. Contractor shall at all times comply with all applicable regulations, policies, procedures, and FEMA Directives as they may be amended or promulgated from time to time during the term of this Agreement, included but not limited to those requirements of 2 C.F.R. §§ 200.317 through 200.326 and more fully set forth in Appendix II to Part 200 – Contract Provisions for Non-Federal Entity Contracts Under Federal Awards, which is included herein by this reference. Contractor's failure to so comply shall constitute a material breach of this Agreement.

2. Contractor agrees to include the above clause in each third-party subcontract financed in whole or in part with Federal assistance provided by FEMA. It is further agreed that the clause shall not be modified, except to identify the subcontractor who will be subject to its provisions.

## C. Compliance with the Contract Work Hours and Safety Standards Act.

Pursuant to section 3701 of title 40 of the United States Code, this Section A shall apply to Contractor in the event the amount payable under this Agreement exceeds $100,000 and may involve the employment of mechanics or laborers.

1. Overtime requirements. No contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty hours in such workweek.

2. Violation; liability for unpaid wages; liquidated damages. In the event of any violation of the clause set forth in paragraph (1) of this section Contractor and any subcontractor responsible therefor shall be liable for the unpaid wages. In addition, such contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory), for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the clause

set forth in paragraph (1) of this section, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty hours without payment of the overtime wages required by the clause set forth in paragraph (1) of this section.

3. Withholding for unpaid wages and liquidated damages. Town shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld, from any moneys payable on account of work performed by Contractor or subcontractor under any such contract or any other Federal contract with the same prime contractor, or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same prime contractor, such sums as may be determined to be necessary to satisfy any liabilities of such contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in paragraph (2) of this section.

4. Subcontracts. Contractor or subcontractor shall insert in any subcontracts the clauses set forth in paragraphs (1) through (4) of this section and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in paragraphs (1) through (4) of this section.

**D. Clean Air Act and Federal Water Pollution Control Act**

This Section B shall apply in the event the amount payable under this Agreement exceeds $150,000.

Clean Air Act

1. Contractor agrees to comply with all applicable standards, orders and regulations issued pursuant to the Clean Air Act, as amended, 42 U.S.C. §§ 7401 *et seq*.

2. Contractor agrees to report each violation to Town and understands and agrees that Town will, in turn, report each violation as required to assure notification to the State of California, Federal Emergency Management Agency, and the appropriate Environmental Protection Agency Regional Office.

3. Contractor agrees to include these requirements in each subcontract exceeding $150,000 financed in whole or in part with Federal assistance provided by FEMA.

Federal Water Pollution Control Act

1. Contractor agrees to comply with all applicable standards, orders and regulations issued pursuant to the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251 *et seq*.

2. Contractor agrees to report each violation to Town and understands and agrees that Town will, in turn, report each violation as required to assure notification to the State of California, Federal Emergency Management Agency, and the appropriate Environmental Protection Agency Regional Office.

3. Contractor agrees to include these requirements in each subcontract exceeding $150,000

financed in whole or in partwith Federal assistance provided by FEMA.

**E. Suspension and Debarment**

1. This Agreement is a covered transaction for purposes of title 2 Code of Federal Regulations parts 180 and 3000. As such, Contractor is required to verify that none of Contractor, its principals (defined at 2 C.F.R. § 180.995), or its affiliates (defined at 2 C.F.R. § 180.905) are excluded (defined at 2 C.F.R.§ 180.940) or disqualified (defined at 2 C.F.R. § 180.935).

2. Contractor represents and warrants that it is not debarred, suspended, or otherwise excluded from or ineligible for participation in Federal assistance programs under Executive Order 12549 "Debarment and Suspension." Contractor agrees that neither Contractor nor any of its third-party subcontractors shall enter into any third-party subcontracts for any of the work under this Agreement with a third-party subcontractor that is debarred, suspended, or otherwise excluded for or ineligible for participation in Federal assistance programs under executive Order 12549.

3. Contractor must comply with title 2 Code of Federal Regulations, part 180, subpart C and title 2 Code of Federal Regulations, part 3000, subpart C and must include a requirement to comply with these regulations in any lower tier covered transaction it enters into.

4. This certification is a material representation of fact relied upon by Town. If it is later determined that Contractor did not comply with title 2 Code of Federal Regulations, part 180, subpart C or title 2 Code of Federal Regulations, part 3000, subpart C, in addition to remedies available to the State of California and the Town of Paradise, the Federal Government may pursue available remedies, including but not limited to suspension and/or debarment.

**F. Procurement of Recovered Materials**

1. In the performance of this Agreement, Contractor shall make maximum use of products containing recovered materials that are EPA- designated items unless the product cannot be acquired—

    a. Competitively within a timeframe providing forcompliance with the Agreement performanceschedule;
    b. MeetingAgreement performance requirements; or
    c. At a reasonable price.

2. Information about this requirement, along with the list of EPA- designate items, is available at EPA's Comprehensive Procurement Guidelines web site, https://www.epa.gov/smm/comprehensive-procurement-guideline-cpg-program.

**G. Byrd Anti-Lobbying Amendment, 31 U.S.C. § 1352 (as amended)**

Contractors who apply or bid for an award of $100,000 or more shall file the required certification. Each tier certifies to the tier above that it will not and has not used Federal appropriated funds to pay any person or organization for influencing or attempting to influence an officer or employee of any agency, a member of Congress, officer or employee of Congress,

or an employee of a member of Congress in connection with obtaining any Federal contract, grant, or any other award covered by section 1352 of title 31 of the United States Code. Each tier shall also disclose any lobbying with non-Federal funds that takes place in connection with obtaining any Federal award. Such disclosures are forwarded from tier to tier up to the recipient.

## H. MBE/WBE REQUIREMENTS

1. Contractor shall take all necessary affirmative steps to assure that minority businesses, women's business enterprises, and labor surplus area firms are used when possible through the "Good Faith Effort" process in 2 C.F.R. § 200.321. Contractor shall document and report its Good Faith Effort processes. Contractor shall also ensure that all of its subcontractors take the affirmative steps required under 2 C.F.R. § 200.321. Affirmative steps must include:

    a. Placing qualified small and minority businesses and women's business enterprises on solicitation lists;
    b. Assuring that small and minority businesses, and women's business enterprises are solicited whenever they are potential sources;
    c. Dividing total requirements, when economically feasible, into smaller tasks or quantities to permit maximum participation by small and minority businesses, and women's business enterprises;
    d. Establishing delivery schedules, where the requirement permits, which encourage participation by small and minority businesses, and women's business enterprises;
    e. Using the services and assistance, as appropriate, of such organizations as the Small Business Administration and the Minority Business Development Agency of the Department of Commerce; and
    f. Requiring all subcontractors to take the affirmative steps listed in paragraphs (a) through (e) above.

## I. MISCELLANEOUS PROVISIONS

1. DHS Seal. Contractor shall not use the Department of Homeland Security ("DHS") seal(s), logos, crests, or reproductions of flags or likenesses of DHS agency officials without specific FEMA pre- approval.

2. FEMA Assistance. Contractor acknowledges that FEMA financial assistance will be used to fund this Agreement only. Contractor shall comply will all applicable federal laws, regulations, executive orders, FEMA policies, procedures, and directives.

2. Federal Government Not Party. The Federal Government is not a party to this Agreement and is not subject to any obligations or liabilities to Town, Contractor, or any other party pertaining to any matter resulting from this Agreement.

3. False Claims. Contractor acknowledges that Title 31 United States Code Chapter 38 (Administrative Remedies for False Claims and Statements) applies to Contractor's actions pertaining to this Agreement.

**J. Equal Employment Opportunity**

During the performance of this Agreement, Contractor agrees as follows:

1. Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided setting forth the provisions of this nondiscrimination clause.

2. Contractor will, in all solicitations or advertisements for employees placed by or on behalf of Contractor, state that all qualified applicants will receive considerations for employment without regard to race, color, religion, sex, or national origin.

3. Contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice to be provided advising the said labor union or workers' representatives of Contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

4. Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

5. Contractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

6. In the event of Contractor's noncompliance with the nondiscrimination clauses of this Agreement or with any of the said rules, regulations, or orders, this Agreement may be canceled, terminated, or suspended in whole or in part and Contractor may be declared ineligible for further Government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions as may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

7. Contractor will include the portion of the sentence immediately preceding paragraph (1) and the provisions of paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. Contractor will take such action with respect to any subcontract or purchase order as the administering agency may direct as a means of enforcing such provisions, including sanctions for

noncompliance: Provided, however, that in the event a contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the administering agency, Contractor may request the United States to enter into such litigation to protect the interests of the United States.

# EXHIBIT 2

**AMENDMENT ONE TO AGREEMENT**

This Amendment dated May 14, 2019, is between the Town of Paradise ("Town") and Ernest & Young, a Limited Liability Partnership ("Contractor").

**WHEREAS,** on January 15, 2019 the Town and the Contractor entered into an Agreement relating to Contractor providing post disaster recovery management.

**WHEREAS,** the Town and Contractor wish to amend the Agreement so that the costs for professional services in Section 2c of the Agreement to increase the total costs for Contractor's services to not exceed the sum of $1,000,000.

**NOW, THEREFORE,** the Town and the Contractor hereby agree that the Agreement shall be amended as follows:

1. Section 2c of the Agreement shall be amended to read:

c. Notwithstanding any other provision in this Agreement to the contrary, the total maximum compensation to be paid for the satisfactory accomplishment and completion of all services to be performed hereunder shall in no event exceed the sum of one million dollars ($1,000,000.00). Contractor acknowledges and agrees that it exceeds the maximum compensation under this Agreement at its own risk. The Town's Administrative Services Director is authorized to pay all proper claims.

2. Any conflicts between the Agreement and this Amendment shall be controlled by this Amendment.

3. All the other provisions of this Agreement shall remain in full force and effect.

TOWN OF PARADISE

By: ______________________
Lauren M. Gill, Town Manager

Ernst & Young LLP

By: ______________________
Allen Melton, Partner

APPROVED AS TO FORM

By: ______________________
Dwight L. Moore, Town Attorney

# EXHIBIT 3

## AMENDMENT TWO TO AGREEMENT

This Amendment dated November 12, 2019, is between the Town of Paradise ("Town") and Ernest & Young, a Limited Liability Partnership ("Contractor").

**WHEREAS,** on January 15, 2019 the Town and the Contractor entered into an Agreement relating to Contractor providing post disaster recovery management.

**WHEREAS,** on May 14, 2019, the Town and Contractor amended the Agreement to increase the amount for Contractor's services.

**WHEREAS,** the Town and Contractor wish to amend the Agreement so that the costs for professional services in Section 2c of the Agreement to increase the total costs for Contractor's services to not exceed the sum of $1,500,000.

**NOW, THEREFORE,** the Town and the Contractor hereby agree that the Agreement shall be amended as follows:

1. Section 2c of the Agreement shall be amended to read:

c. Notwithstanding any other provision in this Agreement to the contrary, the total maximum compensation to be paid for the satisfactory accomplishment and completion of all services to be performed hereunder shall in no event exceed the sum of one million five hundred thousand dollars ($1,500,000.00). Contractor acknowledges and agrees that it exceeds the maximum compensation under this Agreement at its own risk. The Town's Administrative Services Director is authorized to pay all proper claims.

2. Any conflicts between the Agreement and this Amendment shall be controlled by this Amendment.

3. All the other provisions of this Agreement shall remain in full force and effect.

TOWN OF PARADISE

By:____________________
Lauren M. Gill, Town Manager

Ernst & Young LLP

By:____________________
Allen Melton, Partner

APPROVED AS TO FORM

By:____________________
Dwight L. Moore, Town Attorney

# EXHIBIT 4

**AMENDMENT THREE TO AGREEMENT**

This Amendment dated April 14, 2020, is between the Town of Paradise ("Town") and Ernest & Young, a Limited Liability Partnership ("Contractor").

**WHEREAS,** on January 15, 2019 the Town and the Contractor entered into an Agreement relating to Contractor providing post disaster recovery management.

**WHEREAS,** on May 14, 2019, the Town authorized an extension of the Agreement.

**WHEREAS,** on November 12, 2019, the Town and the Contractor amended the Agreement to increase the amount for Contractor's services.

**WHEREAS,** the Town and the Contractor wish to amend the Agreement so that the costs for the Contractor's professional services in Section 2c of the Agreement be changed to not exceed the sum of $2,000,000.

**NOW, THEREFORE,** the Town and the Contractor hereby agree that the Agreement shall be amended as follows:

1. Section 2c of the Agreement shall be amended to read:

c. Notwithstanding any other provision in this Agreement to the contrary, the total maximum compensation to be paid for the satisfactory accomplishment and completion of all services to be performed hereunder shall in no event exceed the sum of two million dollars ($2,000,000.00). Contractor acknowledges and agrees that it exceeds the maximum compensation under this Agreement at its own risk. The Town's Administrative Services Director is authorized to pay all proper claims.

2. Any conflicts between the Agreement and this Amendment shall be controlled by this Amendment.

3. All the other provisions of this Agreement shall remain in full force and effect.

| TOWN OF PARADISE | Ernst & Young LLP |
| --- | --- |
| By: ______________ | By: ______________ |
| ~~Lauren M. Gill,~~ Town Manager<br>Kevin Phillips | Allen Melton, Partner |

# EXHIBIT 5

**AMENDMENT FOUR TO AGREEMENT**

This Amendment dated June 8, 2021, is between the Town of Paradise ("Town") and Ernest & Young, a Limited Liability Partnership ("Contractor").

**WHEREAS,** on January 15, 2019 the Town and the Contractor entered into an Agreement relating to Contractor providing post disaster recovery management.

**WHEREAS,** on May 14, 2019, the Town authorized an extension of the Agreement.

**WHEREAS,** on November 12, 2019, the Town and the Contractor amended the Agreement to increase the amount for Contractor's services.

**WHEREAS,** on April 14, 2020 the Town and the Contractor amended the Agreement so that the costs for the Contractor's professional services in Section 2c of the Agreement were changed to not exceed the sum of $2,000,000.

**NOW, THEREFORE,** the Town and the Contractor hereby agree that the Agreement shall be amended as follows:

1. Section 2c of the Agreement shall be amended to read:

c. Notwithstanding any other provision in this Agreement to the contrary, the total maximum compensation to be paid for the satisfactory accomplishment and completion of all services to be performed hereunder shall in no event exceed the sum of two million two hundred and fifty thousand dollars ($2,250,000.00). Contractor acknowledges and agrees that it exceeds the maximum compensation under this Agreement at its own risk. The Town's Administrative Services Director is authorized to pay all proper claims.

2. Any conflicts between the Agreement and this Amendment shall be controlled by this Amendment Four to Agreement.

3. All the other provisions of this Agreement shall remain in full force and effect.

TOWN OF PARADISE

By: ______________________

Kevin Phillips, Town Manager

Ernst & Young LLP

By: ______________________

Allen Melton, Partner

APPROVED AS TO FORM

By: ______________________

Mark A. Habib, Town Attorney